IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARTIN J. WALSH**, Secretary of Labor,<br><br>Plaintiff,<br><br>*v.*<br><br>**SATORI GROUP, INC., et al.**,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 20-3906-KSM |

## MEMORANDUM

**MARSTON, J.**                                                                                            May 24, 2021

Presently before the Court is Plaintiff the Secretary of Labor's (the "Secretary") motion for default judgment against Defendants Satori Group, Inc. (the "company"), John Florio, Amy Wright, and the Satori Group, Inc. 401(k) Plan (the "Plan").[1] (Doc. No. 5.) The Secretary claims that Defendants violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to forward employees' contributions to the Plan, or remitting such contributions late and without interest, and instead commingling Plan assets with the company's business operating funds. (*See generally* Doc. No. 1.)

For the reasons discussed below, we grant in part Plaintiff's motion for default judgment.

**I.     Background**

Around October 1, 2001, the company established the Satori Group, Inc. 401(k) Plan.[2]

---

[1] "The Plan is joined as a party defendant . . . solely to assure that complete relief can be granted." (*See* Doc. No. 1 at ¶ 9.)

[2] In deciding this motion for default judgment, we accept as true the factual allegations (other than those as to damages) contained in the complaint. *See Serv. Emps. Int'l Union Local 32BJ Dist. 36 v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018).

(*Id.* at ¶ 10.) Employees who participated in the Plan could contribute a portion of their pay to the Plan as elective salary deferrals through payroll deductions. (*Id.*) Florio, the company's Chief Operating Officer, and Wright, the Plan Administrator, both acted as fiduciaries of the Plan. (*Id.* at ¶¶ 7–8.) In addition, the company served as the Plan Sponsor and Plan Administrator and was also a fiduciary of the Plan. (*Id.* at ¶ 6.)

From January 1, 2012 to December 31, 2014, the company, Florio, and Wright deducted money from participants' payroll as employee contributions to the Plan, but failed to timely forward these contributions to the Plan. (*Id.* at ¶¶ 11–12, 15.) Specifically, Defendants either did not remit employee contributions to the Plan or remitted them late and without interest. (*Id.* at ¶¶ 12–13.) Plan assets (i.e., the employee contributions) were commingled with the company's general assets in the company's business operating account. (*Id.* at ¶ 14.) Ultimately, the Secretary claims that at least $75,044.04 of employee contributions were not forwarded to the Plan, and that as of June 6, 2020, interest in the amount of $23,986.08 was owed to the Plan. (*Id.* at ¶ 15.)

The Secretary filed a complaint on August 11, 2020, requesting that this Court:

- order the company, Florio, and Wright to restore to the Plan all losses, including interest or lost opportunity costs and the cost of an independent fiduciary;

- order the Plan to set off Florio and Wright's individual account balances against the amount of the losses and reallocate the account balance to the non-breaching participants, if the losses are not otherwise restored to the Plan;

- order the company, Florio, and Wright to provide all records relating to the finances and administration of the Plan to the Secretary and to make an accounting to the Secretary and the independent fiduciary of all contributions to the Plan and all transfers, payments, or expenses incurred or paid in connection with the Plan;

- appoint an independent fiduciary;

- remove Florio and Wright as fiduciaries of the Plan and any other employee benefit plan for which they act as fiduciaries;

- permanently enjoin Florio, Wright, and the company "from acting directly or indirectly, in any fiduciary capacity, with respect to any employee benefit plan subject to ERISA";

- permanently enjoin Florio, Wright, and the company "from exercising any custody, control, or decision making authority with respect to the assets of any employee benefit plan covered by ERISA";

- bar Florio and Wright from engaging in any future violations of ERISA; and

- award the Secretary the costs of this action.

(*See id.* at pp. 7–8.)

Defendants did not respond to the complaint, nor did they otherwise appear in this action. (*See generally* ECF 20cv3906.)

On October 19, 2020, this Court issued an Order, noting that none of the Defendants had filed a responsive pleading and stating that if any Defendant failed to file a responsive pleading by October 29, 2020, the Secretary could file a request for default against that Defendant pursuant to Federal Rule of Civil Procedure 55(a). (Doc. No. 3.) In accordance with that Order, on November 4, 2020, the Secretary requested that the Clerk of Court enter default against all Defendants (*see* Doc. No. 4), which the Clerk entered that day.

Two months later, on January 4, 2021, the Secretary moved for default judgment. (Doc. No. 5-2.) In an affidavit to the motion, Sean D. White, an investigator, submitted that, as of December 21, 2020, $26,770.66 in interest had accrued and was owed to the Plan. (Doc. No. 5-3 at pp. 3–4.) White also averred that Defendants owed the Plan a grand total of $101,81470, comprised of the $26,770.66 in interest and $75,044.04 in unremitted employee contributions. (*Id.*)

The Court scheduled a hearing on the motion for April 20, 2021, ordered the Secretary to file a supplemental memorandum and affidavit, and directed the Secretary to serve Defendants with copies of the Order, the motion for default judgment, and the supplemental memorandum

3

and affidavit. (Doc. No. 6.)

The Secretary filed an Affidavit of Service, confirming that the required documents had been served on Defendants by way of personal service and email. (Doc. No. 11.)

Defendants did not attend the hearing on April 20, 2021. The day before the hearing, Defendants indicated to the Secretary that they did not intend to attend the hearing or contest the entry of default judgment. (Rough Draft Hr'g Tr. at 2:9–16.)

## II. Legal Standard

"After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has 'failed to plead or otherwise defend' an action, the party may be subject to entry of a default judgment." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 634 (quoting Fed. R. Civ. P. 55(a)). The clerk may enter default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A court's decision to enter default judgment pursuant to Rule 55 "is left primarily to the discretion of the district court." *Perez v. Kwasny*, Civil Action No. 14-4286, 2016 WL 558721, at *2 (E.D. Pa. Feb. 9, 2016) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).

When the plaintiff files a motion to enter default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." 210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Spurio v. Choice Sec. Syst., Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995); *Acosta v. Schwab*, No. 5:18-cv-3544, 2019 WL 7046916, at *2 (E.D. Pa. Dec. 20, 2019). However before

turning to the *Chamberlain* factors, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 635 (quotation marks omitted).[3]

## III. Discussion

### A. *The Secretary Has Stated Claims for Violations of ERISA*

In the complaint, the Secretary claims that the company, Florio, and Wright violated several substantive provisions of ERISA, including:

1) failure to hold all assets of the Plan in trust, in violation of Section 403(a) of ERISA, 29 U.S.C. § 1103(a);

2) failure to ensure that the assets of the Plan did not inure to the benefit of the company in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1);

3) failure to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A);

4) failure to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise

---

[3] In addition, courts typically consider the six factors outlined in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) "when a plaintiff moves under Rule 55(b) for a default judgment as a sanction for failure to plead or otherwise defend." *Anchorage Associates v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 177 (3d Cir. 1990); *see also Perez*, 2016 WL 558721, at *2.

However, the Court agrees with the Secretary that it is unnecessary to consider the *Poulis* factors in this case. (*See* Doc. No. 13.) *Cf. Jimenez v. Rosenbaum-Cunningham, Inc.*, Civil Action No. 07-1066, 2010 WL 1303449, at *2 (E.D. Pa. Mar. 31, 2010) ("On a motion for default judgment against a defendant *who has filed an answer or a responsive pleading but has then failed to properly participate in the litigation*, a court must consider the so-called *Poulis* factors." (emphasis added)); *id.* at *6 (analyzing *Poulis* factors where defendant Cunningham "entered an appearance and filed a responsive pleading" but then "ignored Plaintiffs' discovery requests and [the court's] Order to respond to those requests"); *Kwasny*, 2016 WL 558721, at *1–2 (applying *Poulis* factors where defendant Kwasny "representing all of the Defendants in the case pro se, filed an answer to the Secretary's complaint" and filed a response to the Secretary's motion to strike).

  of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B);

5) causing the Plan to engage in transactions which they knew or should have known constituted the direct or indirect transfer of Plan assets to, or use of Plan assets by or for the benefit of a party-in-interest, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D);

6) dealing with assets of the Plan in their own interest or for their own account, in violation of Section 406(b)(1) and (2) of ERISA, 29 U.S.C. §§ 1106(b)(1) and (2).

(Doc. No. 1 at pp. 5–6 (cleaned up).) The Court addresses each claim in turn below.

### a. Section 403(a) of ERISA, 29 U.S.C. § 1103(a)

First, the Court considers the Secretary's contention that Defendants violated Section 403(a) of ERISA, 29 U.S.C. § 1103(a), which provides that "all assets of an employee benefit plan shall be held in trust by one or more trustees." Here, the Secretary alleges that Defendants failed to remit some employee contributions to the Plan and commingled Plan assets with the company's general assets by keeping them in the general business operating account. (*See* Doc. No. 1 at ¶¶ 12–16.) The Court concludes that this is sufficient to show that the assets of the employee benefit plan were not held in trust and that the Secretary therefore has stated a claim for violation of Section 403(a). *See Kwasny*, 2016 WL 558721, at *1–2 (granting default judgment and finding that the Secretary had stated a claim for violation of 29 U.S.C. § 1103(a), where the defendants withdrew contributions from employees' paychecks but failed to deposit those contributions into the employee benefit plan in a timely manner and instead commingled those contributions with general assets of the firm and used them to pay the firm's expenses); *Solis v. Hartmann*, No. 10 C 123, 2012 WL 3779050, at *7 (N.D. Ill. Aug. 31, 2012) (concluding that the fiduciaries violated Section 403(a) "by failing to remit employee salary deferrals and participant loan repayments to the 401(k) Plan and allowing [the company] to retain these plan assets in the company's general assets"); *see also Perez v. Wallis*, 77 F. Supp. 3d 730, 743 (N.D.

Ill. 2014) (concluding that Wallis violated, *inter alia*, Section 403(a) where the record showed that "the company retained employee contributions in its general account and used them to pay operating expenses. In taking such action, Wallis effectively directed that plan assets be used for the benefit of [the company], rather than for the exclusive benefit of participants and their beneficiaries").

### b. Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1)

Next, the Court turns to the Secretary's claim that Defendants violated Section 403(c)(1)(A) of ERISA, 29 U.S.C. § 1103(c)(1), which provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." *Id.* "As the Supreme Court has explained, 'the purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others.'" *Acosta*, 2019 WL 7046916, at *5 (quoting *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004)). And as the Honorable Joseph F. Leeson, Jr. in this District recently recognized in *Acosta v. Schwab*, there is "scant caselaw discussing the precise elements of a *prima facie* claim of violation of ERISA's anti-inurement provision." *Id.*

Here, the Secretary alleges that from January 1, 2012 to December 31, 2014, Defendants failed to remit employee contributions to the Plan, remitted some contributions late and without interest, and commingled contributions with the general assets of the company (Doc. No. 1 at ¶¶ 11–15), and that as a result, the Plan suffered losses of at least $101,814.70, including interest (*see* Doc. No. 5-3 at p. 4). However, as in *Schwab*, "there are no specific allegations as to what

7

the Defendants used the unremitted funds for." 2019 WL 7046916, at *5 (citations omitted). Nonetheless, like the *Schwab* court, this Court reads the "general command" of § 1103(c)(1) "liberally" and "recognizes that notwithstanding the lack of specific factual assertions, where Plan assets have been commingled with Company funds . . . and the Plan suffers a significant loss . . . it cannot be said that the Plan assets have been held for the *exclusive* purposes of providing benefits to participants in the Plan." *Id.* at *5–6 (cleaned up).

Taken together, we find that the Secretary's complaint states a claim for violation of ERISA's anti-inurement provision. *See id.* (granting declaratory judgment and finding that the Secretary stated a claim under the anti-inurement provision where the Secretary alleged that "Plan assets [had] been commingled with Company funds, the Company cease[d] operation, and the Plan suffer[ed] a significant loss"); *Acosta v. Finishing Pros., LLC*, Civil Action No. 18-cv-00978-RPM-NYW, 2018 WL 6603641, at *5 (D. Colo. Nov. 20, 2018) (noting that "courts interpreting [the anti-inurement] provision have found that the misappropriation of plan assets to corporate accounts constitutes a violation of the anti-inurement provision" and holding that default judgment was warranted on the anti-inurement claim where the Secretary showed that "nearly $40,000 in employee contributions was never remitted to the Plan" and was instead "misappropriated to pay the operating expenses of the company itself"); *see also Chao v. Stuart*, No. Civ.H-04-1115, 2005 WL 1693939, at *7 (S.D. Tex. July 20, 2005) (granting the Secretary's motion for summary judgment and concluding that the defendant had violated 29 U.S.C. § 1103(c)(1) where the defendant, as CEO, used employee-contributed Plan assets to pay the company's debt and commingled Plan funds with corporate accounts); s*ee generally Scalia v. Marzett*, Civil Action No. 1:19cv1164 (TSE/JFA), 2020 WL 6059865 (E.D. Va. June 19, 2020), *report and recommendation adopted*, 2020 WL 4365535 (E.D. Va. July 30, 2020)

8

(recommending that default judgment be granted and finding various violations of ERISA, including on the anti-inurement claim, where the defendants failed to remit $6,443.80 in employee contributions to the 401(k) plan).

### c. Sections 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. § 1104(a)(1)(A) and (B)

Third, the Court addresses the Secretary's allegation that Defendants violated Sections 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A) and (B). Under these provisions,

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
>     A. for the exclusive purpose of:
>
>         i. providing benefits to participants and their beneficiaries; and
>
>         ii. defraying reasonable expenses of administering the plan;
>
>     B. with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. §§ 1104(a)(1)(A) and (B).

In this case, the Secretary alleges that while Defendants acted as the fiduciaries of the Plan, they unlawfully commingled Plan assets with the company's general assets, and failed to forward contributions to the Plan, and, as a result, the Plan suffered significant losses. (Doc. No. 1 at ¶¶ 6–8, 12–15.) These allegations show that Florio and Wright did not act with the requisite "care, skill, prudence, and diligence" of a reasonable fiduciary and that Florio and Wright did not act "for the exclusive purpose of" providing benefits to Plan participants and their beneficiaries. *See, e.g.*, *Schwab*, 2019 WL 7046916, at *6 ("Where, as here, the Complaint alleges that while the Schwabs were acting as fiduciaries the Plan suffered a significant loss, and where, as here, it is alleged that the loss was the result of the Schwabs' unlawful commingling of funds, it seems the Schwabs necessarily cannot be considered to have acted with the 'care, skill, and diligence'

9

of prudent people. Similarly, these allegations, accepted as true, necessitate a finding that the Schwabs failed to act 'for the exclusive purpose of' providing benefits to Plan participants."); *Kwasny*, 2016 WL 558721, at \*1–2 (granting default judgment and concluding that the Secretary stated violations for 29 U.S.C. §§ 1104(a)(1)(A) and (B) where the defendants failed to remit employee contributions in a timely manner, failed to segregate Plan assets from the firm's business account, and used employee contributions to pay the firm's expenses); *see also Finishing Pros., LLC*, 2018 WL 6603641, at \*6 (concluding that default judgment against the defendants on the duty of loyalty and reasonable care provisions of ERISA, 29 U.S.C. § 1104(a)(1)(A) and (B), was appropriate where the defendants misappropriated employee contributions and noting that "courts have generally recognized a breach of the duty of care in cases of willful misconduct in withholding employee contributions" and stating that "using employee contributions to pay operating expenses of the company . . . breaches the duty of loyalty to act solely in the interest of the plan beneficiaries").

As such, the Court concludes that the Secretary has stated claims for violations of Section 404(a)(1)(A) and (B) of ERISA.

### d. Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D)

Fourth, the Court considers the Secretary's allegation that Defendants violated Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D), which provides that a fiduciary "shall not cause the plan to engage in a transaction, if he or she knows that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." *See also Schwab*, 2019 WL 7046916, at \*7 (citations omitted).

In this case, the prohibited transaction is the commingling of employee contributions with the company's general funds in the company's business operating account. *See Schwab*, 2019

WL 7046916, at *7. The Court finds that the Secretary has stated a cause of action under 29 U.S.C. § 1106(a)(1)(D) because the Secretary has alleged that the company, Florio, and Wright were fiduciaries of the plan (*see* Doc. No. 1 at ¶¶ 6–8); that they had "discretionary control respecting management of the Plan" and "administration of the Plan" (*id.*), "from which the Court can draw a plausible inference that they were able to, and did, 'cause' the Plan's assets to be commingled with Company funds," *see Schwab*, 2019 WL 7046916, at *7; that the use of Plan assets was for the benefit of the company and/or the fiduciaries; and "based on their role as managers of the Plan's administration [they] knew or should have known that they were commingling Plan assets with general company funds," *see id.  See id.*; *see also Pender v. Bank of Am. Corp.*, 756 F. Supp. 2d 694, 705 (W.D.N.C. 2010) (finding that the fiduciaries engaged in a prohibited transaction when they transferred and commingled 401(k) assets with a separate cash-benefit plan).

### e. Sections 406(b)(1) and (2) of ERISA, 29 U.S.C. §§ 1106(b)(1) and (2)

Last, we turn to the Secretary's assertion that Defendants violated Sections 406(b)(1) and (2) of ERISA, 29 U.S.C. §§ 1106(b)(1) and (2), which provides that a fiduciary should not "(1) deal with the assets of the plan in his own interest or for his own account" or (2) "act in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interest of the plan or the interests of its participants or beneficiaries."  Here, the Court finds that the Secretary's allegations—specifically, that, in their capacity as fiduciaries, Defendants commingled Plan assets with the company's own funds, resulting in losses to the Plan—support claims for these causes of action. *See Schwab*, 2019 WL 7046916, at *8 ("Accepting the Secretary's allegations as true and drawing all plausible inferences in the Secretary's favor, the Court finds that while acting as fiduciaries, the Schwabs (1) dealt with the Plan's assets in their

own and the Company's interest—a company which they owned and managed—by commingling Plan assets with Company funds, and (2) acted—indeed, they were the lead and likely only actors—in a transaction (again, commingling of funds) involving the Plan, on behalf of a party whose interests are adverse to the interests of the Plan (the Company and/or themselves individually)."); *Hartmann*, 2012 WL 3779050, at *9 (concluding that Hartmann violated § 406(b)(1), where "he retained withheld employee contributions to the Benefit Plan in the [company's] general assts, resulting in direct financial gain to [the company] and indirect financial gain to himself as [the company's] CEO," and that he violated § 406(b)(2) when he allowed the "Benefit Plan's assets to be used for the general operation of the [the company]," thereby engaging in a transaction on behalf of the company, "whose interests where adverse to the interests of the Benefit Plan's participants").

### B. *Under the Chamberlain factors, the Secretary Is Entitled to Entry of Default Judgment*

Having found that Plaintiff states a legitimate cause of action for violations of ERISA, we turn to the *Chamberlain* factors and find that they weigh in favor of granting default judgment in this case.

First, the Secretary and Plan participants will be prejudiced if default judgment is denied. *See Schawb*, 2019 WL 7046916, at *8 ("[D]enying the motion would prejudice the Secretary greatly since the Secretary has been deprived of its ability to litigate the ERISA violations against the Defendants. What's more, the prejudice to the Secretary is, in reality, prejudice to the Plan participants who have been deprived of their contributions by the Defendants' breach of their fiduciary duties."); *Perez*, 2016 WL 558721, at *3 (finding that the entry of default judgment was warranted and noting that "[t]he prejudice to the Secretary is great given that it has been deprived of its ability to litigate the ERISA violations against the Firm.").

Second, Defendant does not appear to have a litigable defense. The Secretary's facts

establish violations of various ERISA provisions. Because Defendant has not filed an answer, there are no facts to suggest that they have a meritorious defense. *See, e.g.*, *Schwab*, 2019 WL 7046916, at *8 ("[C]onsidering they have not responded in this matter, the Defendants have put forth no evidence or facts containing any information that could provide the basis for a meritorious defense . . . . Moreover, the Court may presume that an absent defendant who has failed to answer has no meritorious defense, because it is not the court's responsibility to research the law and construct the parties' arguments for them." (cleaned up)); *cf. Stevens v. Wiggins*, Civ. A. No. 90-7038, 1991 WL 152960, at *2 (E.D. Pa. Aug. 6, 1991) ("A defendant establishes a meritorious defense when defendant's answer, if established at trial, would constitute a complete defense to the action." (quotation marks omitted)). In addition, the Court sees no issues on the face of the complaint with jurisdiction, venue, or the statute of limitations.

Third, the Court concludes that Defendants' delay is due to their own culpable conduct. Defendants were served with the complaint and summons as well as the motion for default judgment, but knowingly decided not to enter an appearance or otherwise defend themselves in this case. (*See* Doc. No. 11 (email chain in which Florio and Wright acknowledge receipt of service of the Court's show cause order, motion for default judgment, supporting documents, and affidavit of costs); Rough Draft Hr'g Tr. at 2:3–16 (the Secretary's counsel explaining that he had spoken with Defendants, who indicated that they did not plan on contesting the motion for default judgment); *id.* at 8:11–14, 13:18–22 ("We had a conference call with them – I think at least maybe two in October and November. They agreed with all of our numbers. They said they didn't want to contest the case.").) *See Kelly M. v. Luzerne Intermediate Unit*, 71 F. App'x 116, 118 (3d Cir. 2003) ("Jerrytone's conduct in failing to respond to the several personal notices he received from plaintiffs' counsel or to appear at several hearings was culpable."); *Schwab*,

13

2019 WL 7046916, at *8 ("[T]he Defendants' failure or refusal to engage in the litigation process and to offer no reason for this failure or refusal may qualify as culpable conduct with respect to the entry of a default judgment." (cleaned up)); *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 (explaining that "culpable conduct" refers to conduct "taken willfully or in bad faith," and finding that "Defendant's failure to respond to the complaint and failure to attend the hearing were both 'willful,' in the sense that Defendant accepted service of the complaint and the order setting the hearing and therefore was aware of the complaint and the hearing" but still failed to appear or otherwise respond to the complaint); *cf. Spurio*, 880 F. Supp. at 405 (finding no culpable conduct where the record "contain[ed] no evidence that defendant's two-day delay was intentionally dilatory or otherwise in bad faith").

## C. Relief

Having determined that the Secretary is entitled to entry of default judgment, the Court must now determine what relief should be awarded. The Secretary seeks: (1) the removal of the company, Florio, and Wright as fiduciaries of this Plan; (2) the appointment of an independent fiduciary, paid for by the company, Florio, and Wright; (3) an order requiring Defendants to restore to the Plan all losses, including interest; (4) an order directing Defendants to provide the Secretary with all books and records relating to the finances and administration of the Plan, and to make an accounting to the Secretary and the independent fiduciary of all contributions to the Plan and all transfers, payments, or expenses incurred or paid in connection with the Plan; (5) an order removing Defendants as fiduciaries of any other employee benefit plan and barring Defendants from engaging in any future violations of ERISA and from serving as fiduciaries in the future; and (6) costs. (*See* Doc. No. 1 at pp. 7–8.)[4]

---

[4] The Secretary's complaint and motion for default judgment also sought an order that the Plan "set off" Florio and Wright's individual account balances against the amount of losses, and "reallocating the

14

First, the Court considers whether to remove Defendants as fiduciaries of the Plan. Under § 1109(a), a fiduciary who has breached his fiduciary duties "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." Having found that Defendants violated ERISA's provisions and their fiduciary duties of loyalty and care (which are encompassed within those provisions), s*ee supra*, the Court concludes that the company, Florio, and Wright should be removed as fiduciaries to the Plan, and that their removal falls within the ambit of the relief contemplated by 29 U.S.C. § 1109(a). *See Schwab*, 2019 WL 7046916, at *9; *Kwasny*, 2016 WL 558721, at *3. The Court recognizes that in light of their removal, "a new Plan fiduciary must be installed" and therefore grants the Secretary's request for the appointment of an independent fiduciary. *Id.* Further, because "[t]his is an expense that would not have accrued but for [Defendants'] breaches," "it is just" that the company, Florio, and Wright pay the costs associated with the independent fiduciary. *See id.* (collecting cases).

Next, the Court addresses the Secretary's request for restitution, namely that Defendants restore to the Plan all losses it suffered, including interest. Under § 1109(a), a fiduciary who has breached his duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." In other words, "[t]he court must require a breaching fiduciary to restore a plan to the position it would have been in but for that fiduciary's illegal conduct." *Kwasny*, 2016 WL 558721, at *3 (citations omitted); *see also*

---

account balance to the non-breaching participants, if the losses are not otherwise restored to the Plan." (*See id.* at p. 7 ¶ 2.) However, during the April 20, 2021 hearing, counsel for the Secretary withdrew this request after the investigator stated that Florio and Wright do not presently have any account balances. (*See* Rough Draft H'rg Tr. at 7:5–8:3, 17:2–16.)

15

*Schwab*, 2019 WL 7046916, at *9.  In addition to the employee contributions that were withheld from the Plan, "the availability of prejudgment interest . . . exists to make plaintiffs whole and to preclude defendants from garnering unjust enrichment."  *Kwasny*, 2016 WL 558721, at *3 ("When the Firm failed to deposit the funds into the Plan, it deprived the participants of the interest on their investment.  In order to place the Plan and its participants in the same position that they would have been in, but for the breaches, the Firm must also remit interest on the withheld funds.").

Along with the motion for default judgment, the Secretary included a declaration of Sean D. White, an investigator with the Employee Benefits Security Administration at the U.S. Department of Labor.  (*See* Doc. No. 5-3.)  In his declaration, White stated that at least $75,044.04 was deducted from participants' paychecks as employee contributions and never forwarded to the Plan.  (*Id.* at ¶ 2.j.)  In addition, White found that, as of December 21, 2020, Defendants owe $26,770.66 in interest.  (*Id.* at ¶ 2.k.)  White explained that he calculated interest on the $75,044.04 amount due by using the Internal Revenue Code underpayment interest rate set forth in 26 U.S.C. §§ 6621 and 6622.  (*Id.*)  Overall, White calculated that Defendants owe the Plan a total of $101,814.70, comprised of $75,044.04 in unremitted employee contributions and $26,770.66 in interest.  (*Id.* at ¶ 2.l.)

The Court credits White's findings and concludes that the Secretary is entitled to the requested restitution, which has been outlined with "reasonable certainty."  *See Schwab*, 2019 WL 7046916, at *10.  The Court also agrees that it is appropriate to apply the interest rate that the IRS charges taxpayers who underpay their taxes, *see Kwasny*, 2016 WL 2016 WL 558721, at *3, and thus White's calculation that Defendants owe $26,770.66 in interest is proper.

Now, the Court turns to the equitable relief that the Secretary seeks, including an order

16

directing Defendants and their agents to provide the Secretary with all books and records and an accounting of Plan finances; an order barring Defendants from violating ERISA in the future; an order removing Defendants from any other employee benefit plan for which they presently act as fiduciaries; and an order permanently enjoining Defendants from acting in any fiduciary capacity with respect to any employee benefit plan covered by ERISA or exercising any custody, control, or decision-making authority with respect to the assets of any employment benefit plan covered by ERISA.

As a preliminary matter, the Court agrees that an order requiring Defendants to provide the Secretary with all books and records and an accounting of Plan finances is warranted in this case. *See Schwab*, 2019 WL 7046916, at *10 ("Undoubtedly, the Defendants' violations of ERISA and their duties as fiduciaries warrants an order directing their cooperation with the Secretary in assuring Plan participants are made whole . . . .").

However, the Court finds that the Secretary has failed to provide sufficient support for a permanent injunction.[5] (*See* Doc. No. 5-2 at pp. 8–10.) *See Schwab*, 2019 WL 7046916, at *10 ("The Secretary has failed to demonstrate how the[] decisions [cited] support a permanent injunction in light of the facts of this case. This is not to say that the Schwabs should or will serve in a future fiduciary capacity; it is only to say that the Secretary has failed to meet his burden."); *see also Finishing Pro., LLC*, 2018 WL 6603641, at *8 ("The court also does not find sufficient basis to recommend that Cahill be permanently enjoined from acting as a fiduciary or

---

[5] As in *Schwab*, the cases on which the Secretary relies are distinguishable and fail to provide the requisite support because they do not involve default judgments. (*See* Doc. No. 5-2 at pp. 8–10.) *See Beck v. Levering*, 947 F.2d 639, 640 (2d Cir. 1991) (affirming district court's order entering partial summary judgment motion and "permanently barring appellants from acting as fiduciaries or providing services to ERISA plans"); *Reich v. Lancaster*, 55 F.3d 1034, 1039 (5th Cir. 1995) (affirming judgment entered following a bench trial); *Brock v. Ardito*, Civil Action File No. 86-0582-G, 1987 U.S. Dist. Lexis 14184, at *2 (E.D.N.Y. May 22, 1987) (granting Secretary's motion for summary judgment).

17

service provider to any ERISA-covered employee benefit plan."). Likewise, the Court finds that the Secretary has not provided adequate support to justify why Florio and Wright should be removed as trustees to any other employee benefit plan.[6] The Court also does not see the need to enter an order barring Defendants from violating ERISA in the future, given that Defendants already have a legal obligation to comply with the law. *See Finishing Pros., LLC*, 2018 WL 6603641, at *8 ("The court finds that enjoining Cahill and Finishing Professionals from violating provisions of ERISA . . . would constitute an impermissibly vague obey-the-law injunction . . . . Cahill and Finishing Professionals are already under an obligation to obey ERISA provisions, as is every individual or corporate entity involved in ERISA administration.").

Finally, the Court holds that the Secretary is entitled to costs incurred, which total $552.40. (*See* Doc. No. 8-1 at ¶¶ 5–7.) *See Schwab*, 2019 WL 7046916, at *11.

## IV. Conclusion

Because the Secretary has stated a legitimate cause of action for violations of ERISA, and the *Chamberlain* factors weigh in favor of granting default judgment, Plaintiff's motion is granted in part and judgment entered in favor of Plaintiff in the amount of $101,814.70, plus costs of $552.40.

An appropriate Order follows.

---

[6] During the hearing, the Secretary's counsel stated that Amy Wright is currently the Plan Administrator for the employee benefit plan at a new company, Xidots. (Rough Draft Hr'g Tr. at 10:21–24.) However, when the Court asked whether there is "any reason to think the same issue is happening with Xidots," the Secretary provided no evidence; rather, the investigator responded, "It's a possibility," without more. (*Id.* at 11:13–15.) When pressed further whether the investigator was aware of any issue with Xidots, the investigator admitted he had not investigated Xidots and was not aware of any issue with Wright's status as a fiduciary with Xidots' plan. (*Id.* at 13:6–11.)